UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN C. TARMAS,

    Plaintiff,

v.                                              Case No. 3:07-cv-290-J-32HTS

DONALD C. WINTER,
Secretary of the Navy,

    Defendant.

**O R D E R**

**i. Status**

This cause is before the Court on Plaintiff's Motion to Compel Discovery (Doc. #28; Motion). The Motion is opposed. *See* Defendant's Reply to Plaintiff's Motion to Compel Discovery (Doc. #30; Opposition).

**ii. Background**

Plaintiff commenced this action against his employer alleging reprisal and disability discrimination. *See* Complaint (Doc. #1; Complaint) at 2. He claims to suffer from delayed sleep phase syndrome, a sensory dysfunction, and a mood disorder. Formal Complaint of Discrimination, attached to the Complaint as Exhibit A, at (externally numbered) 6. According to Mr. Tarmas, he was

discriminated against on the basis of his disability on several occasions in 2005, and one in 2004, with regard to his attendance and use of leave. *Id.* He contends management inappropriately blocked his attempts to "transfer to Code 4.3[.]" *Id.* Additionally, he states "management failed to provide reasonable accommodation with an adequate work schedule." *Id.* Finally, Plaintiff alleges he was discriminated against in the form of "reprisal (for filing an informal EEO complaint on 15 August 2005), when [his] Team Lead . . . sent [him] an e-mail citing poor quality job performance on 2 September 2005[.]" *Id.*

### iii. Discussion

In the Motion, Mr. Tarmas explains he has propounded "seventy-one (71) interrogatory questions[,] with thirty-six (36) . . . still in dispute between the parties." Motion at 2. While he indicates he "has filed his Motion for Leave to Exceed Twenty-Five (25) Interrogatory Questions, of June 30, 2008[,]" Motion at 3, a review of the docket reveals no such filing. Rather, a similarly titled document, Plaintiff's Motion to Request Leave to Exceed Twenty-Five (25) Interrogatory Questions (Doc. #17), was stricken by the Court. *See* Order (Doc. #21) at 3.

Pursuant to Rule 33(a)(1), Federal Rules of Civil Procedure, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." As the Court did not authorize

such service, Plaintiff should have sought a stipulation from Defendant. Nevertheless, it does not appear Mr. Winter has objected to the number of interrogatories. Accordingly, this issue is deemed waived. *See, e.g.*, 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2168.1 (2d ed. 1994); *Holmes v. Trustees of Purdue Univ.*, No. 4:06 CV 114, 2008 WL 656263, at *1 (N.D. Ind. Mar. 5, 2008).

Although Plaintiff represents there are thirty-six interrogatories at issue, the Court counts thirty-eight. From the first set, Mr. Tarmas identifies items 7-8, 11-12, 14-15, 17, 19-22, and 24-25. Motion at 4-24. Interrogatories 1-16 and 25 are at issue from the second set, *id.* at 25-39, while he seeks to compel responses to numbers 1-3, 6, and 18-21 with regard to the third set. *Id.* at 40-57. The Court will address this discovery in detail in the discussion that follows, but a general matter merits consideration at the outset.

In the Opposition, Defendant complains in relation to many items that "Plaintiff failed to make any showing of the particularized need and likely relevancy of the information he requested." Opposition at 3. However, Mr. Tarmas bears no such burden. Except where discovery is irrelevant on its face, *see, e.g., McCloud v. Bd. of Geary County Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *2 (D. Kan. Apr. 11, 2008) (describing facial relevance as a "low burden"), it is "[t]he party opposing a motion

to compel [who] has the burden to show that the discovery is improper, unreasonable, or burdensome." *Belaire at Boca, LLC v. Associations Ins. Agency, Inc.*, No. 06-80887-CIV, 2007 WL 2177212, at *1 (S.D. Fla. July 26, 2007); *see also Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000) ("The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information."); *McCloud*, 2008 WL 1743444, at *2. "When opposing the motion, a party must show specifically how the requested discovery is burdensome, overbroad, or oppressive[.]" *Belaire at Boca*, *LLC*, 2007 WL 2177212, at *1.

### I. First Set of Interrogatories, Numbers 7-8, 11-12, 14-15, 17

#### A. Interrogatory 7

Actually a request for production, this item asked for documentation "authored by Engine Program Team Leads and/or Supervisors, concerning poor quality job performance for all Code 4.4 Propulsion and Power Engineering employees between the dates of 7/1/01 thru present." Motion at 4. The request is explicitly linked to the reprisal claim that "Mr. Wojtyla, the Plaintiff's Team Lead, cited the Plaintiff in E-mails to the Plaintiff and Plaintiff's Supervisor, for poor quality job performance on 9/2/05." *Id.*

Apart from raising objections as to overbreadth, insufficient time limitations, and burdensomeness, Defendant responded by providing information for "those engineers under supervision or technical direction of Mr. Wo[j]tyla for 2005." *Id.* Mr. Winter has failed to justify this restriction. It has been explained the (approximately fifty) employees at issue all "had the same second level supervisor as the Plaintiff . . . and are . . . subject to the same work quality standards[.]" *Id.* at 5-6. Even if some of the individuals had different first-level supervisors, this may not prevent their use as comparators. *See Gover v. Speedway Super America, LLC*, 284 F. Supp. 2d 858, 866 (S.D. Ohio 2003); *cf. Bryant v. Farmers Ins. Co., Inc.*, Civil Action No. 01-02390-CM, 2002 WL 1796045, at *3 (D. Kan. July 31, 2002) (discovery might permissibly extend to "facts and circumstances involving different supervisors" even where a plaintiff must "compare his/her treatment" with those who "dealt with the same supervisor"). The Motion thus will be granted as to this discovery.

**B.  Interrogatory 8**

This interrogatory asked for details about other lawsuits in which "the Agency that the Plaintiff is employed by (FRCSE)" has been a party. Motion at 6. Despite raising objections, Defendant provided some data pertaining to "EEO complaints . . . filed against the Fleet Readiness Center Southeast [in 2004 and 2005] regarding disability discrimination/failure to

accommodate/reprisal[.]"  *Id.*  The Court perceives this interrogatory as being overbroad on its face due to its lack of time or subject matter restrictions.  Even were it not overbroad, it seems to ask for information only as to complaints associated with lawsuits--and since the only similar suit identified is the instant case, nothing additional would be compelled.

### C. Interrogatory 11

This item, which sought "all dates, workday start times, and workday stop times, for all compensatory time and overtime recorded for former Agency Engineering Department Head Robert J. Bull[,]" *id.* at 8, is not relevant on its face.  Information about Mr. Bull, who Defendant identifies as "Plaintiff's third-level supervisor[,]" Opposition at 2, was requested due to Mr. Tarmas's "personal observations of [his] frequent late working hours."  Motion at 8. Plaintiff contends "Mr. Bull's late work hours were regularly accepted and approved by management, while such late hours were disallowed for [him]."  *Id.* at 9.  In that Mr. Tarmas was allegedly limited "to work[ing] no later than 7:00 P.M. *to make up for late arrival*" as part of an accommodation that "allow[ed] a flexible start time[,]" *id.* (emphasis added), whereas Mr. Bull, in addition to having quite different "duties and responsibilities[,]" had not to Defendant's knowledge "request[ed] accommodation for a medical condition of any kind," *id.* at 8, the Court is not convinced of the propriety of the discovery at issue.

**D.   Interrogatory 12**

Through Interrogatory 12 Plaintiff requested "job resumes" and other details "for all engineers transferring, or hiring into the F-18 AT FLIR program and/or EA-6B structures program, from 5/1/03 until present."  *Id.* at 9.   To give some idea of the modest magnitude of his interrogatory, Mr. Tarmas explains there are only about 18 total employees in these programs.  *See id.* at 10-11. Without waiving his objections, Defendant has indicated only that "no employee under [the] supervision [of Plaintiff's first or second-level supervisors] requested accommodation due to a physical disability through official channels and a transfer to another code was agreed upon as a reasonable accommodation."  *Id.* at 10.

Assuming the programs specified are those from which Plaintiff alleges he was improperly blocked, *cf. id.* at 11, the interrogatory is not facially irrelevant.  Additionally, Mr. Tarmas suggests the information obtained may contradict the reasons supplied by his employer for denying transfer.  *See id.*  Accordingly, a full answer to Interrogatory 12 will be compelled.

**E.   Interrogatory 14**

This item concerns a tardy arrival by Plaintiff, whose leave request was apparently not accepted "because no other employee in Code 4.4 experienced delays on the subject dates due to heavy traffic."  *Id.* at 12.  Mr. Tarmas has reacted by asking for "the names of all of the Code 4.4 employees who were queried . . . as to

whether they encountered traffic delays . . . as well as the routes traveled[.]"  *Id.*  Defendant has not objected, but rather has responded to this question by explaining that no other employees were late on the subject dates, and therefore there was no need to inquire into delays or routes taken to work.  *Id.* at 12-13. Plaintiff argues this answer is evasive in that it fails to provide the names of employees queried, *id.* at 13, but a reasonable interpretation of Defendant's response is that no such queries took place.  Thus, because Mr. Russeau did not inquire of anyone, there are no names to be furnished, and the interrogatory has been sufficiently answered.

**F.  Interrogatory 15**

For this interrogatory, Plaintiff desired "the names of all engineering employees who have had leave requests refused by management, and were subsequently charged with AWOL between the dates of 5/1/03 thru present."  *Id.*  He also sought "the justification for denying the leave requested[.]"  *Id.*  Defendant objected on several grounds, but answered "there were no other engineering employees who were charged with AWOL after request for leave was denied due to tardiness[.]"  *Id.*  He asserted "the appropriate comparison group to use was engineering employees who were charged AWOL after their requests for leave were denied due to lateness/tardiness[,]" and so the interrogatory was "overly broad

in that it asked" in relation to employees "who have had [a] leave request refused for any reason[.]"  *Id.* at 14.

Presumably, Mr. Tarmas would like to determine his employer charged him, and no one else, with being AWOL after denying a request for leave.  Alternatively, he may wish to show that only particularly serious infractions led to AWOL status.  Whether or not directly admissible, there is no need to deem this information irrelevant for purposes of discoverability and so it will be compelled.

### G.  Interrogatory 17

This question pertained to the frequency of meetings between Plaintiff and his supervisors.  *See id.* at 15.  It appears Defendant may have already answered this interrogatory to the best of his recollection.  *See id.* at 15-16; Opposition at 4.  Further, to the extent Plaintiff envisioned a detailed log listing every meeting that occurred regardless of subject matter, the request is overbroad and no further response is necessary.  It is noted, however, Defendant was willing to provide more detail as to particular meetings if Plaintiff identified them.  *See* Motion at 16; Opposition at 5.

## II.  First Set of Interrogatories, Numbers 19-22, 24-25; Second Set of Interrogatories, Numbers 1-16

These items directly or indirectly concern various aspects of lunch periods and lunches attended by engineering employees.  Mr.

Tarmas seeks to establish in part that there were "occasions when Mr. Russeau attended lunches with his employees which exceeded the prescribed 30 minutes allowed for engineering employee lunch periods[.]" Motion at 19, 26. Defendant objected on relevance grounds "because . . . Plaintiff did not raise the issue or allegation of being treated differently with respect [to] lunch periods[,]" *id.* at 18, 21, or "being required to submit leave requests for lunches exceeding 30 minutes." *Id.* at 22-25, 28-38.

While the targeted information may tend to show the employer treated *lunch breaks* differently from tardiness or other attendance issues, it would not demonstrate that it treated *Plaintiff* differently. The Court to a certain extent can understand that Mr. Tarmas might have experienced frustration if extended lunch periods were viewed in a different light from late arrivals. Still, it is not convinced that such information is sufficiently related to his claims in this lawsuit to warrant discovery.

### III.  Second Set of Interrogatories, Number 25

Interrogatory 25 asked for "records of all performance awards received by all Propulsion and Power Engineering Division Employees between the dates of 7/1/01 and 12/31/04." *Id.* at 38. Defendant objected as to relevance since "Plaintiff did not raise the issue . . . of receiving or not receiving awards during the referenced time period." *Id.*

- 10 -

Defendant's objection seems to miss the point, as Plaintiff is trying to rebut "claims that [he] was producing poor quality work[,]" which led to his reprisal allegation. *Id.* at 39. Plaintiff states the requested information will demonstrate his "history of excellent work performance compared to similarly situated engineers within his division during the dates specified [and may] shed light [on] why [he] was highly recognized as an excellent worker for consecutive years, . . . then . . . cited as a poor worker several weeks after filing a discrimination complaint." *Id.*

In his Opposition, Mr. Winter asserts generically "there is no showing how such information would establish a prima facie case of reprisal or hostile environment harassment." Opposition at 6. This argument is plainly inadequate to resist the discovery. Because the information is not facially irrelevant, it was Defendant's burden to demonstrate otherwise. As such has not been done, its production will be compelled.

### IV.   Third Set of Interrogatories, Numbers 1-3, 6, 18-21

#### A.   Interrogatory 1

Via this request, Plaintiff inquired whether, "[p]rior to or upon the date of 8/30/05, . . . Ms. [Angela] Bowers discuss[ed] the Plaintiff's EEO intake form or complaint with Mr. Russeau[.]" Motion at 40. He also asked for "all documentation related to all of Ms. Bowers' communications with Mr. Russeau between the dates of

8/15/05 thru 9/2/05." *Id.* Without objecting, Defendant answered that "agency counsels are regularly contacted by management officials to provide advice . . . . Thus, it is possible that Ms. Bowers provided advice or answered questions from Mr. Russeau regarding this matter. No documents were located that were responsive to the request for the period 8/15/05 through 9/2/05." *Id.*

Mr. Tarmas is dissatisfied with Defendant's response in that "[t]he interrogatory specifically requests an explanation as to why Ms. Bowers was on distribution for Mr. Russeau's 8/30/05 E-mail when she had not been on distribution for any prior dated E-mails that were related to the Plaintiff[.]" *Id.* at 41. As the interrogatory, as quoted in the Motion, does not actually ask for such an explanation, there is no cause to consider whether anything further should be compelled in regard thereto.

**B.  Interrogatory 2**

Unlike the interrogatory discussed above, this item sought an "expla[nation as to] why Ms. Bowers was on distribution for Mr. Russeau's 8/30/05 E-mail when she had not been on distribution for any prior E-mails related to the Plaintiff's leave usage, work schedule, or work quality[.]" *Id.* Defendant responded by explaining "Ms. Bowers is an Assistant Counsel in the Office of Counsel, Fleet Readiness Center Southeast (FRCSE). Her major duties include providing legal advice to FRCSE Commanding Officer

and staff of the FRCSE on all matters, to include civilian personnel matters." *Id.* Thereafter, he objected "on the grounds of attorney-client privilege." *Id.* at 42. "Without waiving the objection," Defendant volunteered "it is common to copy agency counsel for guidance related to employee performance related issues and where an informal complaint has been received or filed." *Id.*

Now, however, Defendant indicates his "objection to these interrogatories [(numbers 1-3)] is based on their relevancy to the issues" and states he nevertheless has "responded to each question." Opposition 6-7. Given this willingness to answer the interrogatory and its lack of facial irrelevance, to the extent Mr. Winter has more information responsive to Interrogatory 2 not shielded by the attorney-client privilege, he shall provide it.

**C.   Interrogatory 3**

This item asked about the existence of discussions of "Plaintiff's EEO intake form or complaint with Mr. Wojtyla[.]" Motion at 43. It also sought "all documentation related to all of Ms. Bowers' and Mr. Russeau's communications with Mr. Wojtyla between the dates of 8/15/05 thru 9/2/05." *Id.* Defendant attempted to answer the first portion, but as to "[a]gency counsel's specific discussions with Mr. Wojtyla[,]" raised the attorney-client privilege. *Id.*

Plaintiff currently seeks information concerning whether Ms. Bowers discussed the EEO intake form on or prior to September 2,

2005, with Mr. Wojtyla. *Id.* at 43-44. Given that Defendant did not object to this part of the question and has already informed Plaintiff that "counsel first discussed Plaintiff's formal complaint with Mr. Wojtyla in early December 2005[,]" *id.* at 43, the omission of a response as to the EEO intake form was likely a mere oversight. Consequently, an answer to this aspect of the question will be compelled.

   **D.  Interrogatory 6**

Through Interrogatory 6, Mr. Tarmas probed into whether, "[p]rior to the January 27, 2004 meeting [he] provide[d] management any medical documentation, or exhibit[ed] any observed symptoms of his medical condition that would be cause for Mr. Reckert or Mr. Russeau to assume that [he] would be at risk without supervisor and/or co-worker observation[.]" *Id.* at 44. Defendant responded by referencing a letter "from Victor A. Maquera, M.D. dated 9/5/2003, which is an attachment to Interrogatory # 5[,]" and that was received "[p]rior to the meeting of January 27, 2004[.]" *Id.* Otherwise, Defendant explained his "officials are not medical doctors nor are they specifically trained to observe and recognize symptoms of Plaintiff's medical condition." *Id.*

Mr. Tarmas seems to have been asking whether Mr. Reckert or Mr. Russeau had observed what they interpreted as symptoms that concerned them enough to deem him a liability risk. Although Defendant claims to have "fully responded[,]" Opposition at 7,

merely pointing out that these officials are not medical doctors plainly constitutes an evasive, unsatisfactory answer. Therefore, a fuller response will be compelled.

### E. Interrogatories 18-21

Interrogatory 18 demanded an explanation as to "how the mechanical engineering work load and engineering personnel staffing requirements had changed in the Code 4.8 and 4.5 Engineering Divisions after the Plaintiff's transfer in July 2001[.]" Motion at 45. Similarly, Interrogatory 19 asked for how the workload and staffing requirements changed "upon and after Mr. Baran sent his E-mail to the Plaintiff on 8/20/04[.]" *Id.* at 48. Interrogatory 20 is directed to whether there were "any mechanical engineers assigned to Code 4.8 and Code 4.5 Engineering Divisions when Mr. Baran offered the Plaintiff a transfer to Code 4.5 in April 2006[.]" *Id.* at 51. Finally, the twenty-first interrogatory of the third set is broken into five subparts inquiring into various aspects of Plaintiff's 2006 transfer. *See id.* at 54-55.

The Opposition affirms that, "[a]lthough Defendant objected to the questions on the basis of relevancy, it did respond to the Plaintiff's questions." Opposition at 7. "However," Mr. Winter contends, "it now appears from Plaintiff's motion to compel that he is already knowledgeable of the events he sought from the Defendant. Thus, these interrogatories are tantamount to a fishing expedition, which is not embraced by the discovery process." *Id.*

- 15 -

No additional response will be required of Defendant in regard to Interrogatories 18-19.  Mr. Winter has responded to the items' core concern, and Plaintiff has not demonstrated the relevance of the additional information desired (the pertinence of which is not obvious).  However, Defendant's answer to Interrogatory 20 is clearly incomplete in that it addressed the present number of "mechanical engineers assigned to Code 4.5[,]" Motion at 52, rather than at the time a transfer was offered to Plaintiff "in April 2006[.]"  *Id.* at 51.  Further, Mr. Winter's response to Interrogatory 21 almost completely failed to address any of that item's specific questions.

Defendant's claim that Mr. Tarmas is engaging in a fishing expedition since he already has knowledge "of the events he sought[,]" Opposition at 7, is baffling.  The Court is aware of no rule prohibiting the use of discovery mechanisms to verify or confirm what one already has some knowledge about.  Hence, more complete answers will be compelled for Interrogatories 20-21.

### iv. Conclusion

In light of the foregoing discussion, it is hereby

**ORDERED:**

The Motion (Doc. #28) is **GRANTED** to the extent Defendant shall, to the best of his knowledge and ability, furnish Plaintiff, within ten (10) days from the date of this Order, complete answers to Interrogatories 7, 12, and 15 from the first set; Interrogatory

25 from the second set; and Interrogatories 2 (to the extent not protected by the attorney/client privilege), 3 (as to whether Ms. Bowers discussed the EEO intake form on or prior to September 2, 2005, with Mr. Wojtyla), 6 and 20-21 from the third set. Otherwise, the Motion is **DENIED**.

    **DONE AND ORDERED** at Jacksonville, Florida, this 17th day of September, 2008.

                                      /s/       Howard T. Snyder
                                HOWARD T. SNYDER
                                UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
    and pro se parties, if any