**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHN C. TARMAS,

                                  Plaintiff,

v.                                                          Case No.  3:07-cv-290-J-32TEM

RAY MABUS,
SECRETARY OF THE NAVY,

                                  Defendant.
_____/

## ORDER

        John Tarmas is an aerospace and mechanical engineer who has been a civilian

employee of the United States Navy for the past 25 years.  In 1999, Tarmas started having

trouble sleeping and experienced intermittent numbness of his face and body.  Tarmas

consulted physicians and was eventually diagnosed with cervical sensory dysfunction,

delayed sleep phase syndrome and possible depression.  Although the Navy initially granted

Tarmas' various requests for adjustments to his work hours to accommodate his symptoms,

eventually Tarmas became dissatisfied with the Navy's handling of his requests and on

August 15, 2005 Tarmas contacted an equal employment opportunity ("EEO") counselor to

file a formal complaint of discrimination.  When the EEOC found no discrimination, Tarmas

filed this pro se lawsuit.  The Navy[1] has now moved for summary judgment claiming that

several of Tarmas' claims are untimely and that Tarmas has failed to present a prima facie

_____

[1]

        Tarmas' complaint properly names Donald C. Winter, Secretary of the Navy (who
has since been replaced by Ray Mabus), as the defendant.  For simplification throughout
this Order, the Court refers to defendant as "the Navy."

case as to any of his other claims.  As explained below, the Court agrees with the Navy on both these points and judgment is therefore due to be granted in favor of the Navy.

## I.     Summary Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252–53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).  Although factual inferences are to be viewed "favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts," "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).  "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." Schechter v. Ga. State Univ., 341 Fed. App'x 560, 562 (11th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## II.      Synopsis of Relevant Background and Procedural Facts[2]

When Tarmas' health issues initially surfaced in 1999, his manager in the Navy's avionics engineering section informally agreed to allow Tarmas to work on a flexible schedule that would accommodate his sleep problems.  In 2001, Tarmas sought a transfer to the Navy's "T56 engine team," in the aerospace division.  Tarmas advised Rick Reckert, a manager whose division oversaw the T56 engine team, that he (Tarmas) suffered from a medical condition that caused insomnia and occasionally affected his ability to work normal hours.  Reckert told Tarmas that his sleeping condition should not present a problem and offered him the job on the T56 engine team.

Tarmas worked on the T56 engine team without incident until the spring of 2003 when Anthony Wojtyla became the T56 team lead and Tarmas was advised by a division manager (Jim Russeau) that his work schedule had become a problem.  Tarmas then met with Reckert, reminded him of Tarmas' need for accommodation in his work schedule due to his medical condition and, in a meeting in September of 2003, Tarmas provided Reckert with a letter from Tarmas' neurologist, Dr. Victor Maquera, which provided some information about Tarmas' medical condition.  At that time, Reckert informally agreed to allow Tarmas to continue on a flexible work schedule.  In January 2004, Reckert again met with Tarmas,

---

[2]

   Consistent with summary judgment practice, these facts are either undisputed or are stated in a light most favorable to Tarmas.  See White v. Mercury Marine, Div. of Brunswick, Inc., 129 F.3d 1428, 1430 (11th Cir. 1997).  Exhibit A to the Navy's motion for summary judgment (Doc. 95) is the EEO counselor's investigative file and most of the evidence relied on by the parties (and recited here) is contained in that composite exhibit.

informing him that Reckert could no longer honor their informal agreement, that any future agreement would have to be formalized, and that Tarmas would need to provide additional medical documentation to support any further request for a flexible schedule. Reckert suggested they work toward formalizing a schedule that would allow Tarmas to begin work at 10:30 a.m. but Tarmas rejected the proposal.

After the January meeting, Tarmas sent Reckert an email agreeing to begin work at 7:15 a.m. but adding that he would use accrued leave time to fill any hours missed due to tardiness. In May, 2004, Reckert prepared a memorandum chronicling Tarmas' recent tardiness and requesting medical documentation. Tarmas visited Dr. Maquera who submitted letters to the Navy stating that Tarmas was on medication for his sleeping condition, suffered from insomnia three to four nights a week, and noting that his condition was aggravated by cross-country travel, necessitating an accommodation following those trips. In July 2004, the Navy (through Russeau) agreed to adjust Tarmas' schedule for a period of several days following cross-country travel. Tarmas agreed to this accommodation and signed the memo. Tarmas explains that he did so because he believed he would soon be granted a request for a transfer to a different division. However, Tarmas' subsequent transfer requests (from June 2004 through February 2005) were denied.

On May 10, 2005 Tarmas and Russeau disagreed over whether Tarmas should have submitted a leave slip for personal time spent during the course of work-related cross-country travel. Tarmas investigated and determined Russeau's interpretation of the policy was in error. On August 10, 2005, Tarmas was late for work. Russeau refused to accept Tarmas' leave request and charged Tarmas with an unauthorized absence. According to

Tarmas, at that point, he determined that the Navy was discriminating against him and he contacted an EEO counselor on August 15, 2005.  That day and the next day, Tarmas was late because of heavy traffic and he was again charged with unauthorized absences.  On August 18, 2005, Russeau issued Tarmas a three page "Letter of Caution" which outlined incidents of Tarmas' alleged "failure to follow proper leave requesting procedures, unauthorized absence, and suspected leave abuse."   Doc. 95, Ex. A at 28-30. Notwithstanding the tone, the letter explained that it was not a punitive measure as it would "not be filed in [Tarmas'] Official Personnel Folder nor [would] it be counted as a prior offense when determining a remedy for future offenses."  Id.  Tarmas responded to the letter a few days later, rebutting the allegations.  Tarmas also contacted his union president, who sent an email to Russeau cautioning him to treat Tarmas' medical condition appropriately lest he run afoul of the ADA, and correcting Russeau on a point regarding the leave policy.  On September 2, 2005, Wojtyla (the T56 team leader) sent Tarmas an email informing Tarmas that the technical quality of his work was unsatisfactory and requesting that Tarmas be more diligent and pay greater attention to detail.  Tarmas responded to Wojtyla in a September 6, 2005 email admitting that errors had occurred, but blaming Wojtyla.

On September 28, 2005, the EEO Office received Tarmas' formal complaint of discrimination in which he outlined nine separate allegations of discrimination, spanning from the Navy's July 2004 accommodation (which Tarmas alleged was inadequate) to the September 2, 2005 email from Wojtyla (which Tarmas took to be reprisal for his August 15, 2005 contact with the EEO counselor).  An EEO investigation ensued under the auspices of the Department of Defense, Investigations and Resolutions Division, resulting in a file of

5

more than 600 pages, and the matter was ultimately referred to an Administrative Judge with the EEOC.  On November 22, 2006 the Administrative Judge issued an opinion finding no discrimination[3] and on January 11, 2007 the Department of Defense issued a final order, advising Tarmas of his right to file a notice of appeal with the EEOC or to file suit in federal court within 90 days.

Tarmas filed his complaint in this Court on April 10, 2007, attaching his initial EEO formal complaint of discrimination, in which he alleged that the following events constituted discriminatory acts in violation of Title VII, the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973:[4]  (1) the Letter of Caution dated August 18, 2005; (2) Russeau's failure to accept Tarmas' leave requests for arriving late on August 15 and 16, 2005; (3) Russeau's failing to accept his August 10, 2005 leave request and charging him with an unauthorized absence due to receiving his phone call at 9:39 a.m. rather than 9:30 a.m.; (4) Russeau's placing an arbitrary 8:00 a.m. call-in requirement upon Tarmas on May 12, 2004 and August 10, 2005; (5) Russeau's requiring him to submit a leave slip on May 10, 2005 after returning from a work trip; (6) management's blocking two transfers, one in August 2004 and another in October 2004; (7) management's blocking a different transfer between June 2004 and February 2005; (8) management's failure to provide him an adequate accommodation on July 1, 2004; and (9) Wojtyla's September 2, 2005 email to

_____

[3]     Neither party filed the Administrative Judge's opinion.

[4]
       Tarmas' original complaint with the EEO Office alleged discrimination based on both his physical disability and his age.  Tarmas withdrew his age discrimination claim before the matter reached federal court.  See Exhibit B to Doc. 1.

Tarmas citing him for poor quality work performance.  <u>See</u> Doc. 1 and exhibits thereto.  The Navy filed an Answer (Doc. 7) to the Complaint, denying the bulk of the allegations and alleging several affirmative defenses.  The parties engaged in a full (and, unfortunately, contentious) period of discovery, and the Court delayed the case schedule for a while to permit the parties an opportunity to try to resolve the case in a settlement conference with the Magistrate Judge.  Those efforts failed, and the Navy moved for summary judgment, filing numerous exhibits in support of its motion.  <u>See</u> Doc. 95 and exhibits thereto.  Tarmas responded in opposition, filing additional exhibits.  <u>See</u> Doc. 96 and exhibits thereto.  This matter is now ripe for decision.

## III.    Governing Law

The Rehabilitation Act provides a federal employee's exclusive remedy for disability-related employment discrimination.  <u>See</u> 42 U.S.C. § 12111(5)(B) (defining employers under the ADA and excluding as a covered employer the United States or a corporation wholly owned by the United States government); <u>see also</u> <u>Dark v. Potter</u>, 293 Fed. App'x 254, 258 n.22 (5th Cir. 2008) (stating that the Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination"); <u>Rivera v. Heyman</u>, 157 F.3d 101, 103 (2d Cir. 1998) (holding Rehabilitation Act provided sole remedy for federal employee's claim for employment discrimination on the basis of disability).  However, the same standards apply to claims asserted under the Rehabilitation Act as apply to those brought under the ADA.  <u>Sutton v. Lader</u>, 185 F.3d 1203,1208 n.5 (11th Cir.1999).  "[T]hus, cases involving the ADA are precedent for those involving the Rehabilitation Act."  <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).  As for Tarmas' retaliation

claim, the Rehabilitation Act again supplies the exclusive remedy, incorporating by reference § 12203(a) of the ADA, which provides in relevant part that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." Shannon v. Postmaster Gen. of U.S. Postal Serv., 335 Fed. App'x 21, 26 (11th Cir. 2009).  In turn, the ADA's anti-retaliation provision is similar to that found in Title VII.  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).  "Accordingly, this court assesses retaliation claims pursuant to the Rehabilitation Act under the same framework used for Title VII retaliation claims." Shannon, 335 Fed. App'x at 26 (citing Stewart, 117 F.3d at 1287).

IV.    **Analysis**

    A.    **Timeliness Issue**

The Rehabilitation Act requires federal employees who suspect they have been subject to discrimination to consult an EEO counselor within 45 days of the discriminatory act.  29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action"); Delaware State Coll. v. Ricks, 449 U.S. 250, 256–57 (1980) ("[L]imitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past.").  In cases alleging discrete discriminatory actions, such as failure to promote, denial of transfer, refusal to hire, or individual acts of retaliation, the 45-day requirement begins to run on the day the offending action occurs. See National R.R. Passenger Corp. v.

<u>Morgan</u>, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").  Failure to contact an EEO counselor within the 45-day period ordinarily bars a party from proceeding with a claim of discrimination on grounds that the party has failed to exhaust available administrative remedies.  <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1344 (11th Cir. 2008) ("Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies.").

While the facts of this case span several years, Tarmas did not seek EEO counseling until August 15, 2005.  Thus, his claims concerning the May 12, 2004 call-in requirement, the May 10, 2005 leave slip requirement, the blocked transfers, and management's failure to provide an adequate accommodation on July 1, 2004, all fall outside the 45-day limitations period.  Tarmas contends, however, that his claims are not time-barred because the allegedly discriminatory acts "are daily recurring up until the present day."  Doc. 96 at 13. However, unlike a hostile environment claim, the Supreme Court has dispensed with the "continuing violation doctrine" as it affects discrete discriminatory acts such as those alleged by Tarmas.  <u>See</u> <u>Morgan</u>, 536 U.S. at 110.  This time bar applies even where specific acts bear relationship to other acts alleged in a timely filed charge.  <u>Id.</u> at 111.  Because the allegedly discriminatory actions mentioned above occurred more than 45 days before Tarmas sought EEO counseling, any claims based on them are time-barred.

Nonetheless, while the exhaustion requirement is mandatory, it is not a jurisdictional prerequisite and so is subject to certain equitable remedies, including tolling, estoppel, and waiver.  <u>See</u>  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982) (explaining in

context of a Title VII action that failure to exhaust administrative remedies is not jurisdictional prerequisite to filing suit in federal court); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (explaining that time limits constructed by the EEOC "erect no jurisdictional bars" but, instead, operate akin to statutes of limitations).  However, Congress has established the procedural requirements for gaining access to federal courts and those requirements may not be lightly disregarded.  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).  Thus, equitable remedies such as tolling, estoppel, and waiver are to be applied only sparingly.  Morgan, 536 U.S. at 113.

In its Answer, the Navy asserted as an affirmative defense that Tarmas had failed to exhaust his administrative remedies (Doc. 7 at p. 6), and has reiterated this in its summary judgment motion as grounds for dismissal of the earlier claims.  Thus, the Navy has not waived its right to assert exhaustion and, although the EEO counselor considered every claim Tarmas raised in her efforts to informally resolve his complaints, Tarmas has not suggested that this informal process served as a waiver or that the Navy is otherwise estopped from asserting untimeliness now.[5]  As for equitable tolling, a court may toll time

---

[5] Even though the informal EEO process included discussion and investigation of Tarmas' early claims, neither party filed the EEOC November 22, 2006 decision which found no discrimination.  Thus, the record does not include information as to whether the EEOC Administrative Judge considered the early claims on their merits or deemed them to be untimely.  In any event, there is no evidence in the record upon which the Court could find the Navy has waived its affirmative defense of failure to exhaust as to the claims that occurred more than 45 days before Tarmas' August 15, 2005 contact with the EEO counselor.  See Oaxaca v. Roscoe, 641 F.2d 386, 390 (5th Cir. April 3, 1981) (binding in the Eleventh Circuit pursuant to Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)) (holding that administrative investigation of untimely complaint does not bar government from asserting untimeliness as defense in federal court unless administrative

limitations only in carefully circumscribed instances.  Jackson v. Astrue, 506 F.3d 1349, 1353

(11th Cir. 2007).   A heavy burden rests upon the plaintiff to produce facts showing

"extraordinary circumstances" prevented him from seeking EEO counseling within the

prescribed time period.  Id.  According to EEO regulations, the 45-day requirement may be

tolled only where:  (1) "the individual demonstrates that he or she was not notified of the time

limits and was not otherwise aware of them"; (2) "he or she did not know and reasonably

should not have known that the discriminatory matter or personnel action occurred"; (3) "that

despite due diligence he or she was prevented by circumstances beyond his or her control

from contacting the counselor within the time limits"; or (4) "for other reasons deemed

sufficient by the agency."  See 29 C.F.R. § 1614.105(a)(2).  See also, Pacheco v. Rice, 966

F.2d 904, 906-07 (5th Cir. 1992) (discussing these EEOC regulations and determining that

no basis existed for tolling as to plaintiff's untimely complaint).

    Tarmas attempts to invoke this Court's equitable powers by arguing that he was

"'reasonably' unaware (until the date of August 10, 2005) that Defendant's actions legally

constituted acts of disability discrimination."  Doc. 96 at 12.  However, the purpose of the

EEO counseling requirement is to initiate an investigation into employer actions the

employee suspects to be discriminatory.  Olson v. Mobil Oil Corp., 904 F.2d 198, 202 (4th

Cir. 1990).  "It is not necessary to the filing of a charge that one possess a proven case."

Id.  The time limits for filing claims of employment discrimination generally begin to run when

_____

investigation finds discrimination); see also Boyd v. U.S. Postal Serv., 752 F.2d 410, 414 (9th
Cir. 1985) (holding that investigation of complaint did not waive later objection based on
untimeliness where investigation yielded finding of no discrimination).

the act occurs, not when the employee "first perceives that a discriminatory motive caused the act." Merrill v. Southern Methodist Univ., 806 F.2d 600, 605 (5th Cir. 1986).  It would "effectively eviscerate the [prescribed]  time limits" for filing complaints if the courts were to permit employees to wait to raise claims until they suspected "illicit motives." Pacheco, 966 F.2d at 906.  Morever, the record shows that as early as 2003, when Wojtyla became Team Lead, Tarmas began having difficulties with management over his arrival times, with management declining to accommodate his health-related requests.  Yet Tarmas did not contact an EEO counselor until August 10, 2005.  Plaintiff has failed to meet his heavy burden of producing facts to show "extraordinary circumstances" prevented him from seeking EEO counseling within the prescribed time period.  Jackson, 506 F.3d at 1353.  Therefore, the claims of discrimination arising from the May 12, 2004 call-in requirement; the May 10, 2005 leave slip requirement; the blocked transfers between June 22, 2004 and February 17, 2005; and management's failure to provide an adequate accommodation on July 1, 2004, are time-barred.[6]

## B.    Disability Discrimination Claims

Most of Tarmas' remaining claims are disability discrimination claims.  These are: Russeau's 8:00 a.m. call-in requirement and unauthorized absence charge on August 10, 2005;  Russeau's failure to accept Tarmas' leave requests for August 15 and 16, 2005; and the August 18, 2005 Letter of Caution.

───────────────────────

[6]

Going by the list of nine EEO claims attached to Tarmas' complaint, those the Court finds untimely are: (5), (6), (7), (8) and the part of (4) related to the May 12, 2004 call-in requirement.

Under the <u>McDonnell Douglas</u>[7] burden shifting analysis used in circumstantial evidence cases such as this, a plaintiff may establish a prima facie case of disability discrimination by showing that (1) he has a disability; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment decision was made because of his handicap. <u>See</u> <u>Doe v. Dekalb County Sch. Dist.</u>, 145 F.3d 1441, 1445 (11th Cir. 1998); <u>see also</u> <u>Sutton</u>, 185 F.3d at 1207 (discussing standard). Under the Rehabilitation Act, it is insufficient for a plaintiff to demonstrate that an adverse employment action was based partly on his disability. <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005).  Rather, according to the plain text of the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action "solely by reason of" his handicap. <u>Id.</u> (citing 29 U.S.C. § 794(a)).

Once a plaintiff makes the required prima facie showing, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action.  <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  "However, the employer's burden is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" <u>Id.</u> (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254–55 (1981)).  "If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced

---

[7]    <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Id. (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)).  If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's explanations is pretextual, the defendant is entitled to summary judgment. Wascura v. City of South Miami, 257 F.3d 1238, 1243 (11th Cir. 2001).

Tarmas is unable to establish a prima facie case of disability discrimination, because, even assuming that he has demonstrated that he is disabled (a point the Navy does not concede), and that he is otherwise qualified for the position, he has failed to prove that he suffered an adverse employment action.  While an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire, or demotion, it must meet a "threshold level of substantiality." Davis v. Town of Lake Park, 245 F.3d 1232, 1238–39 (11th Cir. 2001).  Evidence of "direct economic consequences" is not required, but "an employee must show a serious and material change in the terms, conditions, or privileges of employment." Id. at 1239.  An employee's subjective perception of the seriousness of the change is not controlling; rather, the question is viewed from the perspective of a reasonable person in the circumstances. Id.

Upon reviewing the record, the only occurrence that can remotely be considered "adverse" is the August 18, 2005 Letter of Caution.  The August 10, 2005 call-in incident and the August 15 and 16, 2005 unauthorized absence issue were referenced in the August 18, 2005 document.  The issuance of this letter, however, cannot reasonably be considered an

14

"adverse employment" action for purposes of the Rehabilitation Act.  It was merely an admonition that Tarmas be more diligent with respect to following procedures, hence the title: "Letter of Caution."  Moreover, the letter, by its own terms, states that it "will not be filed in [Tarmas's] Official Personnel Folder nor will it be counted as a prior offense when determining a remedy for future offenses." (Def's Ex. A at 29.)  While it does state that a copy will be "retained in the division files," it had no punitive or otherwise negative impact. Any harm caused by the letter was de minimis, thus failing to rise to the level of a "serious and material change" in the "terms, conditions, or privileges" of Tarmas' employment.  See Davis, 245 F.3d at 1239; see also Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (explaining that in Title VII cases it is important to distinguish "significant from trivial harms").[8]

## C.    Retaliation Claim

Tarmas' final[9] claim is that the September 2, 2005 email he received from Wojtyla was a retaliatory act for his filing a complaint with the EEO.  As with disparate treatment claims

---

[8]        This resolves Tarmas' EEO claims numbered (1), (2), (3) and part of (4).

[9]        The Navy includes within its brief a section addressing the propriety of Russeau's November 28, 2005 decision to not modify Tarmas's July 1, 2004 accommodation.  Tarmas' Complaint does not reference the November 28, 2005 decision, nor do any of the accompanying documents (see Doc. 1 and exhibits thereto) and as far as the record reflects, Tarmas never sought to amend his complaint with the EEOC or with this Court to add that claim.  Thus, there is no claim before the Court regarding the November 28, 2005 decision and whether it comprised a discriminatory action.  Because the July 1, 2004 accommodation claim is time-barred, no reasonable accommodation claim is before the Court.  See Brown v. Snow, 440 F.3d 1259, 1266 (11th Cir. 2006) (holding that district court properly refused to address allegation of retaliation not included in complaint).

15

brought under the Rehabilitation Act, retaliation claims based on circumstantial evidence are subject to the <u>McDonnell Douglas</u> framework.  <u>Stewart</u>, 117 F.3d at 1287;  <u>Woodruff v. Peters</u>, 482 F.3d 521, 528 (D.C. Cir. 2007) (applying "Title VII's <u>McDonnell Douglas</u> burden-shifting framework to retaliation claims under the Rehabilitation Act").  To satisfy the first prong of the test and establish a prima facie case of retaliation a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events.  <u>Holifield v. Reno</u>, 115 F.3d 1555, 1566 (11th Cir. 1997). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse." <u>White</u>, 548 U.S. at 68.  A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> (internal quotation and citation omitted).

From the vantage of a reasonable person, the email Wojtyla sent Tarmas cannot be considered a materially adverse employment action.  It is unremarkable that a superior would send a poorly performing employee an email noting that his work had been sub-par and requesting that the employee do better in the future.  Tarmas claims that the materiality benchmark was met because Wojtyla forwarded the email to another supervisor and memorialized the critique in the form of an email, instead of hand writing the comments and corrections on a draft copy of the reviewed documents.  <u>See</u> Doc. 96 at 17.  However, there is nothing adverse, sinister, or remarkable about forwarding a critique of an employee to another supervisor who may need to be aware of a potential work issue.  While Tarmas may have interpreted Wojtyla's email as a personal affront and his subsequent dissemination of

16

the email to another supervisor as an assault upon his professional reputation, these occurrences did not affect the material conditions of Tarmas' employment and are part and parcel of "the ordinary tribulations of the work place" and do not amount to actions that would have a material effect upon the "terms, conditions, or privileges" of employment.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Byrd v. Auburn U. at Montgomery, 2007 WL 1140424, *14 (M.D. Ala. Apr. 17, 2007) (concluding that employee's complaints of being "treated with hostility and criticized," receiving "offensive emails and directives," and a change in employment classification were not materially adverse employment actions).[10]  Thus, Tarmas' retaliation claim fails as well.[11]

For the reasons stated above, it is hereby

**ORDERED:**

1.      Defendant's Motion for Summary Judgment (Doc. 95) is **GRANTED** in full.

2.      Summary judgment is entered in favor of defendant, Ray Mabus, Secretary of the Navy, and against plaintiff, John C. Tarmas.

3.      All other pending motions are terminated and the Clerk shall close the file.

---

[10]

Moreover, Tarmas, who still works for the Navy, has subsequently received "acceptable" ratings for his work and cash performance awards.  See Doc. 95, Ex. A. at 621-22, Ex. F, Ex. G.

[11]

This resolves Tarmas' EEO claim number (9).

17

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of September, 2010.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.

copies to:
pro se plaintiff
counsel of record

18